IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **IFPOWER CO., LTD.,**<br><br>    **Plaintiff,**<br>v.<br><br>**ANKER INNOVATIONS LTD.,**<br><br>    **Defendant.** | Civil Action No. 1:23-cv-01499<br><br>Jury Trial Demanded |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff IFPower Co., Ltd. ("IFPower" or "Plaintiff") hereby files its Original Complaint against Defendant Anker Innovations Ltd. ("Defendant" or "Anker") alleging infringement of U.S. Patent Nos. 7,298,361 (the "'361 Patent"); and 7,863,860 (the "'860 Patent") (collectively, the "Patents-in-Suit").

### I.  PARTIES

1. Plaintiff IFPower is a company existing under the laws of Taiwan, with its principal place of business located 1 F., No. 2, Ln. 18, Shuangyuan St., Wanhua Dist., Taipei City 10884, Taiwan (R.O.C.).

2. Upon information and belief, Defendant Anker Innovations Ltd. is a corporation organized and existing under the laws of Hong Kong, with a principal place of business located at Room 1318-19, Hollywood Plaza, 610 Nathan Road, Mongkok, Kowloon, Hong Kong SAR, People's Republic of China 518040, where it may be served with process.

ORIGINAL COMPLAINT

1

## II.  JURISDICTION AND VENUE

3. This is an action for patent infringement which arises under the Patent Laws of the United States, in particular 35 U.S.C. §§ 271, 281, 284 and 285. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331, §1338(a).

4. This Court has jurisdiction over Defendant under Fed. R. Civ P. 4(k)(2) ("Federal Claim Outside State-Court Jurisdiction") and 28 U.S.C. §1400 (b).

5. Upon information and belief, Defendant is subject to this Court's personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, because (1) Defendant has done and continues to do business in Texas and the Western District of Texas; (2) Defendant has committed and continues to commit acts of patent infringement in the State of Texas, including inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein.

6. Upon information and belief, Defendant has purposefully directed its activities toward the State of Texas and purposefully availed itself of the privileges of conducting activities in the State of Texas.  Plaintiff's causes of action for patent infringement arise out of and result from Defendant's contact with the State of Texas.

7. Upon information and belief, Defendant has solicited business in the State of Texas, transacted business within the State of Texas and/or attempted to derive financial benefit from residents of the State of Texas and the residents of this District, including benefits directly related to infringement of the Patents. Defendant has placed its products and/or services into the stream of commerce throughout the United States and has been actively engaged in transacting business in Texas and in the Western District of Texas.

8. Upon information and belief, Defendant, through subsidiaries or intermediaries (including distributors, retailers, resellers and others), makes, imports, ships, distributes, offers for sale, sells, uses, and advertises its products and/or services in the United States, the State of Texas, and the Western District of Texas.

9. Alternatively, to the extent Defendant's contacts with the State of Texas and this District would not support jurisdiction under the Texas long-arm statute, Defendant is subject to Federal Long-Arm Jurisdiction under Federal Rule of Civil Procedure 4(k)(2) because (1) Plaintiff's claim arises under federal law, (2) Defendant is not subject to jurisdiction in the courts of general jurisdiction of any state within the United States, and (3) the exercise of jurisdiction satisfies due process requirements.

10. To the extent Defendant's contacts with the State of Texas and this District would not support jurisdiction under the Texas long-arm statute, Defendant lacks substantial contacts with any single state but has sufficient contacts with the United States. To the extent Defendant's contacts with the State of Texas and this District would not support jurisdiction under the Texas long-arm statute, Defendant is not subject to jurisdiction in the courts of general jurisdiction of any state within the United States.

11. The Court's exercise of personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice because Defendant has established minimum contacts with the State of Texas or, in the alternative, the United States.

12. Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§ 139l(c)(3) which provides that "a Defendant not resident in the United States may be sued in any judicial district, and the joinder of such a Defendant shall be disregarded in determining where the action may be brought with respect to other Defendants."

### III.  FACTUAL BACKGROUND

<u>PATENTS-IN-SUIT</u>

13.   IFPower is the owner of all right, title, and interest in and to U.S. Patent No. 7,298,361 (attached as **Exhibit 1**), entitled "Non-Contact Electric Inductance Circuit for Power Source," issued on November 20, 2007.

14.   IFPower is the owner of all right, title, and interest in and to U.S. Patent No. 7,863,860 (attached as **Exhibit 2**), entitled "Battery Cover," issued on January 4, 2011.

<u>TECHNICAL OVERVIEW</u>

15.   The '361 Patent is directed to a non-contact inductance circuit for a power source. The inductance circuit converts input alternating current into signals with a high-frequency harmonic vibration. The alternating electric current passes through an amplifier.



'361 Patent, Fig. 1.

16.   During operation, a feedback circuit **13** transmits the voltage or current of the harmonic circuit to a processor to analyze the value of the detected voltage or current.

17. Conventional chargers for electronic devices with rechargeable batteries such as computer mice or smartphones required a physical cable connection between the power supply and the electronic device.

18. Prior art wireless chargers used harmonic vibration energy provided by alternating signals from a coil. That energy is converted into electrical energy by the receiving device. '361 patent, 1:17-24. This is accomplished through interoperations of an internal inductance and an internal capacitor. *Id.*, 1:38-43.

19. Even for inductors and capacitors with a given specification, however, there are practical operating ranges that reflect some differences during operation. As a result, mismatches between characteristics arise which reduce the efficiency of the circuit or require repeated and cumbersome adjustment. *Id.*, 1:43-56.

20. The inventions are thus directed to a nonconventional feedback and adapted-to-adjusting frequency oscillating circuit for physical, wireless chargers.

> When in operation, the adapted-to-adjusting-frequency oscillating circuit generates alternating electric current that passes to the harmonic circuit after being amplified through the driving circuit, and the feedback circuit transmits the voltage or the current of the harmonic circuit to the microprocessing circuit that analyses the value of the voltage or the current detected, then the adapted-to-adjusting-frequency oscillating circuit adjusts the frequency of subsequent input alternating electric current, in order that the entire electric inductance circuit for the power source can generate the best harmonic frequency.

*Id.*, 2:5-15.

21. Additionally, in certain embodiments, the inductance circuit is further integrated with a signal processing circuit. In this way, the electric inductance circuit for the power source can be used for radio signal transmission. *Id.* 15 2:16-24.

ORIGINAL COMPLAINT

5

22. The '860 Patent is directed to wireless charging, whereby a device incorporating the inventions claimed therein can be charged without a cable between the device and charger or removing internal batteries.



'860 Patent, Fig. 4.

23. The invention provides and incorporates in the infringing system a battery cover with circuitry adapted to wireless couple to an RF (radio frequency) emitter for generating electric power for charging a battery by a non-touch induction mode.



FIG.5

'860 Patent, Fig. 5.

24.     The '860 Patent claims priority to a Taiwanese application filed on June 29, 2007.

25.     The WPC published the Qi low-power specification over two years later, in August 2009.

**Defendant's Acts**

26.     Defendant is a provider of consumer electronics products offering wireless charging in accordance with certain WPC Qi wireless charging standards.

27.     For example, Defendant's 3-in-1 Cube, Anker 315 Wireless Charging Pad, Anker 544 Wireless Charger, and Anker Wireless Charging Stations adopt and comply with the Qi wireless charging standard. Defendant represents compliance to its customers and instructs them how to wirelessly charge using the Qi charging standard.

ORIGINAL COMPLAINT

  

https://www.amazon.com/Anker-Wireless-Charger-PowerWave-Qi-Certified/dp/B07WFB6QMV?ref_=ast_sto_dp&th=1 .

28.     Anker obtains FCC approval for its infringing products, which it imports into and sells in the United States.

**FCC Statement**
This device complies with Part 15 of the FCC Rules. Operation is subject to the following two conditions: (1) This device may not cause harmful interference, and (2) this device must accept any interference received, including interference that may cause undesired operation.
**Warning:** Changes or modifications not expressly approved by the party responsible for compliance could void the user's authority to operate the equipment.
**Note:** This equipment has been tested and found to comply with the limits for a Class B digital device, pursuant to Part 15 of the FCC Rules. These limits are designed to provide reasonable protection against harmful interference in a residential installation.

**Radiation Exposure Statement**
This equipment complies with FCC radiation exposure limits set forth for an uncontrolled environment. This equipment should be installed and operated with minimum distance of 20 cm between the radiator & your body.

Product Name: **PowerWave** Stand
Model: A2524
Anker Innovations Limited
Room 1318-19, Hollywood Plaza, 610 Nathan Road, Mongkok, Kowloon, Hong Kong

PowerWave Stand User Manual.

ORIGINAL COMPLAINT

8

29.     Anker provides written and video instructions for implementing wireless charging using its technology.



https://www.youtube.com/watch?v=fASEuBjncqk

30.     On information of belief, Defendant also implements contractual protections in the form of license and use restrictions with its customers to preclude the unauthorized reproduction, distribution, and modification of its products.

31.     Moreover, on information and belief, Defendant implements technical precautions to attempt to thwart customers who would circumvent the intended operation of Defendant's products.

ORIGINAL COMPLAINT

9

## IV.  PATENT INFRINGEMENT

<u>COUNT I — INFRINGEMENT OF U.S. PATENT NO. 7,298,361</u>

32. Anker has directly infringed and continues to infringe one or more claims of the '361 Patent in this judicial district and elsewhere in the United States by, among other things, making, having made, importing, using, offering for sale, and/or selling the claimed system and methods of the '361 Patent.

33. At a minimum, Anker has been, and now is, infringing claims of the '361 Patent by making, importing and/or using infringing systems and/or methods. Anker infringes at least claim 1 of the '361 Patent.

34. The infringing products include, but are not limited to, Defendant's 3-in-1 Cube, Anker 315 Wireless Charging Pad, Anker 544 Wireless Charger, and Anker Wireless Charging Stations, including when used with Qi-compliant phones, watches and other devices (the "'361 Infringing Products"). IFPower alleges that each and every element is literally present in the '361 Infringing Products. To the extent not literally present, IFPower reserves the right to proceed under the doctrine of equivalents.

35. More specifically, the '361 Infringing Products include a non-contact electric inductance circuit for a power source wherein a circuit amplifies an alternating current by an oscillator through a driving circuit and pass to a harmonic circuit.

36. In accordance with the WPC specification, the electric inductance circuit has a feedback circuit, a micro-processing circuit and an adapted-to-adjusting-frequency oscillating circuit integrated with one another.

ORIGINAL COMPLAINT



Figure 5-2: Power transfer control loop

https://cupdf.com/document/wpc-specification.html

37. Anker modifies the power provided to optimize the charge.

ORIGINAL COMPLAINT



https://www.anker.com/products/a2524?ref=naviMenu&variant=37438027137174

38.     Anker has indirectly infringed and continues to infringe the '361 Patent by inducing the infringement of the '361 Patent. With knowledge of the '361 Patent, Anker directs and aids its customers in using the '361 Infringing Products by the provision of its products and software, and related equipment and provision of instruction (including, by way of example, the tutorials, user guides, product guides, and other documentation located at https://www.anker.com/support) to customers as well as functionality embedded in the '361 Infringed Products (including firmware and source code) with knowledge that the induced acts constitute patent infringement. When a

**ORIGINAL COMPLAINT**

user of one of the '361 Infringing Products uses an Anker charger for wireless charging, the '361 Infringing Product operates in an infringing manner. Anker possesses specific intent to encourage infringement by its customers.

39. Anker has contributed to the infringement of, and continues to contribute to the infringement of, one or more claims of the '361 Patent under 35 U.S.C. § 271(c) and/or 271(f), either literally and/or under the doctrine of equivalents, by selling, offering for sale, and/or importing into the United States, the '361 Infringing Products. Anker knows that the components of the '361 Infringing Products: constitute a material part of the inventions claimed in the '361 Patent; are especially made or adapted to infringe the '361 Patent; and are not staple articles or commodities of commerce suitable for non-infringing use, but rather the components are used for or in systems that infringe one or more claims of the '361 Patent. The hardware and/or software components are not a staple article or commodity of commerce because they are specifically designed to perform the claimed functionality. These products are specifically designed for their infringing purpose, namely wireless charging in accordance with the claims of the '361 Patent. Any other use of the hardware and/or software components would be unusual far-fetched, illusory, impractical, occasional, aberrant, or experimental.

40. IFPower has been damaged as a result of Anker's infringing conduct. Anker is thus liable to IFPower in an amount that adequately compensates it for Anker's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II — INFRINGEMENT OF U.S. PATENT NO. 7,863,860

41. Anker has directly infringed and continues to infringe one or more claims of the '860 Patent in this judicial district and elsewhere in the United States by, among other things,

making, having made, importing, using, offering for sale, and/or selling the claimed system and methods of the '860 Patent.

42. At a minimum, Anker has been, and now is, infringing claims of the '860 Patent by making, importing and/or using infringing systems and/or methods. Anker infringes at least claim 1 of the '860 Patent.

43. Anker's infringing products include, but are not limited to, Defendant's 3-in-1 Cube, Anker 315 Wireless Charging Pad, Anker 544 Wireless Charger, and Anker Wireless Charging Stations that are compliant with or use the Qi wireless charging protocol (the "'860 Infringing Products"). The '860 Infringing Products are specifically designed to interoperate with a battery cover as claimed. Anker puts the infringing system into use as a whole. Anker tests the '860 Infringing Products to ensure that battery covers meeting specified criteria are used in conjunction with Anker's products.





https://www.amazon.com/Anker-Wireless-Charger-PowerWave-Qi-Certified/dp/B07WFB6QMV?ref_=ast_sto_dp&th=1 .

44. In accordance with the WPC specification, the '860 Infringing Products are designed to interoperate with a rectifying wave filtering circuit.



https://www.wirelesspowerconsortium.com/data/downloadables/3/3/2/3/qi-v13-public.zip

45. IFPower alleges that each and every element is literally present in the '860 Infringing Products. To the extent not literally present, IFPower reserves the right to proceed under the doctrine of equivalents.

46. Anker has indirectly infringed and continues to infringe the '860 Patent by inducing the infringement of the '860 Patent. With knowledge of the '860 Patent, Anker directs and aids its customers in using the '860 Infringing Products by the provision of its products and software, and related equipment and provision of instruction (including, by way of example, the tutorials, user guides, product guides, and other documentation located at https://www.anker.com/support) to customers as well as functionality embedded in the '860 Infringed Products (including firmware and source code) with knowledge that the induced acts constitute patent infringement. When a user of one of the '860 Infringing Products charges the phone or watch, the '860 Infringing Product

ORIGINAL COMPLAINT

operates in an infringing manner. Anker possesses specific intent to encourage infringement by its customers.

47.     Anker has contributed to the infringement of, and continues to contribute to the infringement of, one or more claims of the '860 Patent under 35 U.S.C. § 271(c) and/or 271(f), either literally and/or under the doctrine of equivalents, by selling, offering for sale, and/or importing into the United States, the '860 Infringing Products. Anker knows that the components of the '860 Infringing Products: constitute a material part of the inventions claimed in the '860 Patent; are especially made or adapted to infringe the '860 Patent; and are not staple articles or commodities of commerce suitable for non-infringing use, but rather the components are used for or in systems that infringe one or more claims of the '860 Patent. These products are specifically designed for their infringing purpose, namely wireless charging in accordance with the claims of the '860 Patent. The hardware and/or software components are not a staple article or commodity of commerce because they are specifically designed to perform the claimed functionality. Any other use of the hardware and/or software components would be unusual far-fetched, illusory, impractical, occasional, aberrant, or experimental.

48.     IFPower has been damaged as a result of Anker's infringing conduct. Anker is thus liable to IFPower in an amount that adequately compensates it for Anker's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## V.  WILLFULNESS

49.     Anker was provided notice of IFPower's claims at least by way of the Original Complaint filed against it.

50. Anker acted and continues to act with knowledge of the Patents-in-Suit despite an objectively high likelihood that its actions constituted infringement of IFPower's valid patent rights.

51. This objectively defined risk was either known or so obvious that it should have been known to Anker. IFPower seeks enhanced damages pursuant to 35 U.S.C. §284.

## VI.   JURY DEMAND

52. IFPower demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to Fed. R. Civ. P. 38.

## VII.   PRAYER FOR RELIEF

53. WHEREFORE, Plaintiff IFPower prays for judgment and seeks relief against Defendant as follows:

   a. Judgment that one or more claims of the Patents-in-Suit have been infringed, either literally and/or under the doctrine of equivalents;

   b. Award Plaintiff past and future damages together with prejudgment and post-judgment interest to compensate for the infringement by Defendant of the Patents-in-Suit in accordance with 35 U.S.C. §284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. §284;

   c. That the Court declare this an exceptional case and award Plaintiff its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

   d. That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: December 11, 2023

Respectfully submitted,

*/s/ Andrew G. DiNovo*
Andrew G. DiNovo
Texas State Bar No. 00790594
Michael D. French
Texas State Bar No. 24116392
**DiNovo Price LLP**
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Telecopier: (512) 727-6691
adinovo@dinovoprice.com
mfrench@dinovoprice.com

**ATTORNEYS FOR PLAINTIFF IFPOWER**